**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAELLA G. KATZ, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> v.<br><br>MAREX GROUP PLC, IAN THEO LOWITT, and CRISPIN ROBERT JOHN IRVIN,<br><br>     Defendants. | Civil Action No.<br><br><u>CLASS ACTION</u><br><br><u>DEMAND FOR JURY TRIAL</u> |

**COMPLAINT FOR VIOLATIONS OF THE**
**<u>FEDERAL SECURITIES LAWS</u>**

Michaella G. Katz ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes, without limitation: (a) review and analysis of regulatory filings made by Marex Group plc ("Marex" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Marex; and (c) review of other publicly available information concerning Marex.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal securities class action on behalf of all persons and entities that sold short Marex securities between August 14, 2024 and August 5, 2025, inclusive (the "Class Period"), against Marex and certain of its officers and executives, seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2.      Marex, a U.K.-based diversified global financial services platform, operates five reporting segments: (1) Clearing; (2) Agency and Execution; (3) Market Making; (4) Hedging and Investment Solutions; and (5) Corporate.  Marex's Market Making segment provides direct liquidity to its client across a variety of products traded in the energy, metals, agriculture, and securities markets.

3.      Unbeknownst to investors, Marex failed to inform investors that it improperly inflated its cash flow and the revenues, assets, and profits of its Market Making segment through off-book intercompany transactions.

4.      As a result of the wrong acts and omissions by Marex, Chief Executive Officer ("CEO") Ian Theo Lowitt, and Chief Financial Officer ("CFO") Crispin Robert John Irvin

(together, the "Defendants"), Plaintiff and other class members (the "Class") have suffered significant losses and damages.

## JURISDICTION AND VENUE

5.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b), 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b–5).

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

7.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(a)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's common stock is listed on the Nasdaq Global Select Market (the "Nasdaq"), a national securities exchange.  Therefore, the alleged illegal conduct was carried out, in part, in this Judicial District.

8.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone and wire communications, and the facilities of a national securities exchange.

## PARTIES

9.     Plaintiff Michaella G. Katz, as set forth in the accompanying certification, incorporated by reference herein, sold short Marex securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

10.     Defendant Marex is a U.K.-based diversified global financial services platform. The Company maintains substantial operations in the United States, including its principal U.S. corporate offices, which are located in New York, New York and Chicago, Illinois.  Marex's common stock trades on the Nasdaq under the ticker "MRX."

11.     Defendant Ian Theo Lowitt ("Lowitt") has served as the Company's CEO since January 2016 and Executive Director of Marex's Board of Directors (the "Board") since November 2012.

12.     Defendant Crispin Robert John Irvin ("Irvin") has served as the Company's CFO since April 2023 and a Director since May 2023.

13.     Defendants Lowitt and Irvin (together, the "Individual Defendants") because of their positions with Marex, possessed the power and authority to control the contents of, among other things, Marex quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors (i.e., the market).  The Individual Defendants were provided with copies of Marex's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

14.     Marex, a U.K.-based diversified global financial services platform.  Marex operates five reporting segments: (1) Clearing; (2) Agency and Execution; (3) Market Making; (4) Hedging

and Investment Solutions; and (5) Corporate.  Marex's Market Making segment provides direct liquidity to its client across a variety of products, including energy, metals, agriculture, and securities markets.  The segment primarily generates revenue by charging a spread between buying and selling prices.  Marex evaluates the performance of its Market Making segment—especially its Securities products—by tracking trade volumes, which provides an important and useful lens to view Marex's business (e.g., a higher trade volume will generate more Market Making revenue because there are more spreads to charge).

15.    In 2018 and September 2021, Marex launched its Structured Notes Private Offer Program and Public Offer Program, respectively, which are at the core of its financial products business (together, the "Financial Products"). The Financial Products business is part of Marex's Hedging and Investment Solutions segment and provides Marex's clients with structured investment products, including Structured Notes, and represents a way to diversify Marex's sources of funding and to reduce the utilization of revolving credit facilities.

16.    At first glance, its 2024 cash flow from operating activities appears strong at $1.2 billion, significantly exceeding net income of $296 million.  In reality, Marex includes debt issuance (e.g., Structured Notes)—an inherently financing activity—in its operating cash flow. This significantly inflates its reported free cash flow by hundreds of millions of dollars.  For example, adjusted for this accounting maneuver, Marex's operating cash flow is negative: -$150 million in 2024, -$258 million in 2023, and only modestly positive at $160 million in 2022.  Free cash flow would follow a similar pattern: -$170 million in 2024, - $271 million in 2023, and $150 million in 2022.  Therefore, Marex's seemingly positive cash flow is, in fact, negative—artificially boosted by the proceeds from debt issuance.

17.    Marex also systematically inflates its revenues through intercompany transactions with its subsidiaries.  The number of subsidiaries owned by Marex has ballooned from eight in 2020 to 58 by the end of 2024.  Marex's use of intercompany transactions has grown in lockstep with the addition of new subsidiaries.  Relying upon this increasingly complex web of potential counterparties, Marex has often failed to properly account for the cashflow in the intercompany transactions—improperly recognizing revenue between its entities and failing to book corresponding receivables and payables.

18.    Marex's investments with, and eventual acquisition of, Volatility Performance Fund SA SICAV-RAIF ("VPF") is a clear example of Marex's off-book machinations.  In 2018, VPF, which BIP Asset Management and BIP Trading (UK) Limited (together, "BIP Trading") launched as a volatility arbitrage strategy across multiple asset classes, had shifted its operations by 2018 to trade almost exclusively with Marex.  VPF's financial statements for the year ending in March 31, 2019 establishes that Marex served not just as a broker and custodian, but effectively as the sole counterparty to VPF's trades.  The market turmoil in March 2020 caused VPF to generate an overdraft exceeding EUR 16.7 million and effectively wiped-out EUR 47 million by the end of 2020.

19.    Given Marex's significant exposure to VPF as its sole counterparty at the time of the market turmoil, Marex bailed out VPF by recapitalizing it and purchasing all shares on March 24, 2020, then by acquiring BIP Trading and VPF's investment advisor.  Marex's Board neither reviewed nor approved these transactions, marking a significant deviation from Marex's established governance procedures.

20.    In 2021, VPF would have once again wiped out its Net Asset Value ("NAV") were it not for Marex's dubious accounting treatment.  Specifically, Marex's recapitalization of VPF

was recorded twice: first, as "Other income" in VPF's statement of operations for the fiscal year ending March 31, 2020, with a corresponding receivable on its balance sheet; and again as a subscription in the subsequent fiscal year. The fund continued to operate through FY 2021 and FY 2022, maintaining hundreds of millions of dollars in derivative positions. Since Marex is both the sole investor in the fund and effectively its only counterparty—across brokerage, trading, and execution through various subsidiaries—the company should have consolidated the fund's assets and liabilities and properly reflected the associated market exposure on its own balance sheet. Marex excluded VPF from its firm-wide Value-at-Risk model and stress tests from 2020 to 2022, despite being the sole investor, trading counterparty, and manager of the fund and its substantial derivatives exposure. It was only included in 2023—after Marex quietly transferred all risk-bearing assets to the Marex Fund, another off-balance sheet entity, in December 2022. The Marex Fund reported more than $930 million in derivatives on the Company's only published accounts to date, dated December 31, 2022. The Marex Fund was not included in any of Marex's Value-at-Risk model.

21.     More than once, regulators have successfully untangled Marex's web of intercompany transactions to discover improprieties. For example, in 2020, the Commodity Futures Trading Commission fined Marex and certain of its subsidiaries after finding the Company hid that it had been undercapitalized for 33 months by failing to recognize an intercompany loan.

22.     Additionally, Marex has had constant restatements in the last three consecutive years. For example: (i) in 2024, Marex restated its 2023 consolidated balance sheet by $138.5 million due to an error in the presentation of certain derivative instruments; (ii) in 2023, Marex restated its 2022 revenue by $633 million, Marex's main subsidiary, Marex Financial, restated its 2022 income statement by lowering it by $118.3 million, restated its Property, Plant, and

Equipment line item, and restated the amount non-current and current of its issued debt securities; and (iii) in 2022, Marex restated its balance at a prime broker, and also restated its 2021 receivables and derivatives position, lowering the assets by $1.23 billion and the liabilities by $1.16 billion, resulting in a $71 million lower equity. These repeated restatements point to more than just isolated accounting errors—they suggest deeper structural and control weaknesses within Marex's financial reporting. The frequency, scale, and nature of these adjustments raise serious questions about the reliability of Marex's reported numbers, especially in light of the company's sprawling and increasingly opaque group structure.

23.     Throughout the Class Period, Defendants inflated earnings results by inflating cash flow and misreporting intercompany transactions.

## FALSE AND MISLEADING STATEMENTS

24.     On August 14, 2024, the Company published its 2024 Interim financial results, reporting $5.135 billion in cash and liquid assets, representing a 15% year-over-year increase generated by Structured Notes.

25.     During the earnings call the same day, Defendant Irvin touted Marex's liquidity and assured the market that the Company's liquidity levels make Marex resistant to market turmoil. Irvin stated:

> [W]e continue to maintain prudent levels of surface capital and liquidity, which underpins our investment-grade credit ratings from both S&P and Fitch. These levels of surplus capital and liquidity also ensure that we are well positioned in periods of market turmoil. At the end of the first half of 2024, our total capital ratio was 276%, and we had liquidity headroom of $1.2 billion.

Marex Group plc, H1 2024 Earnings Call (Aug. 14, 2024).

26.     Later on the call, Defendant Lowitt touted Marex's Structured Notes program, stating:

I think that we continue to see a lot of demand for sort of Marex and structured notes. I do think that we are keen to diversify our funding sources away from just structured notes. And I think that's something that in the fullness of time, we will realize. But we're certainly seeing sort of genuine interest, and so I would anticipate that we will be able to continue to grow broadly speaking, at the rates that we've grown historically for that particular product.

*Id.*

27.    Marex also reported $111.3 million in revenue from its Market Making segment, representing a 23% year-over-year increase, driven by a 106% year-over-year increase in its Metals products.  Notably, Marex reported that its Securities products suffered a 16% year-over-year decrease and saw a 50% year-over-year reduction in trading volumes.

| | 6 months ended 30 June 2024 | 6 months ended 30 June 2023 | Change |
|---|---|---|---|
| | $m | $m | |
| Metals | 68.4 | 33.2 | 106% |
| Agriculture | 14.3 | 22.0 | (35)% |
| Energy | 13.8 | 17.8 | (22)% |
| Securities | 14.8 | 17.7 | (16)% |
| Revenue | 111.3 | 90.7 | 23% |
| Front office costs | (55.2) | (48.7) | 13% |
| Control and support costs | (16.4) | (18.0) | (9)% |
| Depreciation and amortisation | (0.2) | (0.1) | 100% |
| Other Income and share of results of associates | — | 0.9 | (100)% |
| Adjusted Operating Profit ($m)[1] | 39.5 | 24.8 | 59% |
| Adjusted Operating Profit Margin[1] | 35% | 27% | 800 bps |
| | | | |
| Front office headcount (No.)[2] | 107 | 90 | 19% |
| Marex volumes: Metals (m) | 17.1 | 13.2 | 30% |
| Marex volumes: Agriculture (m) | 18.1 | 14.2 | 27% |
| Marex volumes: Energy (m) | 0.9 | 1.0 | (10)% |
| Marex volumes: Financials (m) | 1.0 | 2.0 | (50)% |
| Market volumes: Metals (m) | 217.0 | 168.0 | 29% |
| Market volumes: Agriculture (m) | 297.0 | 269.0 | 10% |
| Market volumes: Energy (m) | 839.0 | 675.0 | 24% |
| Market volumes: Financials (m) | 5,314.0 | 5,033.0 | 6% |

1. These are non-IFRS financial measures. See Appendix 1 "Non-IFRS Financial Measures and Key Performance Indicators" for additional information and for a reconciliation of each such IFRS measure to its most directly comparable IFRS measure.

2. The headcount is as at the end of the period.

28.    On September 10, 2024, Marex presented at Barclays 22nd Annual Global Financial Services Conference 2024.  During the presentation, an analyst asked Lowitt to provide additional color on how Marex uses Structured Notes to facilitate funding.  Lowitt responded:

So structured notes are essentially a way to embed a derivative in a Marex bond, which is sort of issued to whoever wants a particular investment return. So it could be the best of 3 equity stocks or some combination of that. So there's almost an infinite variety of how investors might choose to express particular views, which they then sort of embed in the structured notes. So the exposure on that is sort of hedged out completely. There's some amount of sort of sales credit that results from it, but we also generate a decent amount of cash.

Now we don't -- we tend to just hold that cash on the balance sheet to be available to deal with sort of stresses in the marketplace so we can continue to support our clients. So what you'll see on our balance sheet currently is a level of residual cash just in sort of the corporate world, which is essentially matching the amount of liabilities that are created by sort of structured notes. But the knowledge that we have that excess liquidity gives us so much confidence that we can continue to support our clients through more challenging environments.

Marex Group plc, Transcript (Sept. 10, 2024).

29.     On November 7, 2024, Marex released its third quarter 2024 financial results, reporting $5.829 billion in cash and liquid assets, representing a 31% year-over-year increase. Marex also reported $52 million in revenue generated by its Market Making segment, representing over a 100% year-over-year increase. Despite reporting a 136% year-over-year revenue increase for its Securities products in its Market Making segment, Marex reported a 71% year-over-year decrease in trading volumes.

| | 3 months ended 30 September 2024 | 3 months ended 30 September 2023 | | 9 months ended 30 September 2024 | 9 months ended 30 September 2023 | |
|---|---|---|---|---|---|---|
| | $m | $m | Change | $m | $m | Change |
| Metals | **31.8** | 9.6 | 231% | **100.2** | 42.8 | 134% |
| Agriculture | **3.8** | 5.2 | (27)% | **18.1** | 27.2 | (33)% |
| Energy | **6.0** | 6.5 | (8)% | **19.8** | 24.3 | (19)% |
| Securities | **10.4** | 4.4 | 136% | **25.2** | 22.1 | 14% |
| **Revenue** | **52.0** | 25.7 | 102% | **163.3** | 116.4 | 40% |
| Front office costs | **(29.0)** | (19.9) | 46% | **(84.2)** | (68.6) | 23% |
| Control and support costs | **(5.8)** | (5.7) | 2% | **(22.2)** | (23.7) | (6)% |
| Depreciation and amortisation | **(0.1)** | (0.1) | 0% | **(0.3)** | (0.2) | 50% |
| Other Income and share of results of associates | **—** | 0.2 | n.m.[3] | **—** | 1.1 | n.m.[3] |
| **Adjusted Operating Profit ($m)[1]** | **17.1** | 0.2 | n.m.[3] | **56.6** | 25.0 | 126% |
| Adjusted Operating Profit Margin[1] | **33%** | 3% | n.m.[3] | **35%** | 21% | 1400 bps |
| | | | | | | |
| Front office headcount (No.)[2] | **107** | 92 | 16% | **107** | 92 | 16% |
| Marex volumes: Metals (m) | **11.0** | 7.0 | 57% | **33.2** | 19.9 | 67% |
| Marex volumes: Agriculture (m) | **9.0** | 7.0 | 29% | **27.0** | 21.0 | 29% |
| Marex volumes: Energy (m) | **0.6** | 0.5 | 20% | **1.5** | 1.5 | 0% |
| Marex volumes: Financials (m) | **0.4** | 1.4 | (71)% | **1.4** | 3.9 | (64)% |
| Market volumes: Metals (m) | **107.0** | 83.0 | 29% | **324.0** | 251.0 | 29% |
| Market volumes: Agriculture (m) | **138.0** | 124.0 | 11% | **435.0** | 393.0 | 11% |
| Market volumes: Energy (m) | **439.0** | 353.0 | 24% | **1,279.0** | 1,028.0 | 24% |
| Market volumes: Financials (m) | **2,862.0** | 2,336.0 | 23% | **8,177.0** | 7,369.0 | 11% |

1. These are non-IFRS financial measures. See Appendix 1 "Non-IFRS Financial Measures and Key Performance Indicators" for additional information and for a reconciliation of each such IFRS measure to its most directly comparable IFRS measure.

2. The headcount is as at the end of the period.

3. n.m. = not meaningful to present as a percentage

30.     During the earnings call the same day, Lowitt touted the Market Making segment's performance, touting that it significantly outperformed the broader market and assured investors revenues would outpace volume increases as Marex attracted additional larger clients (suggesting that volumes are tied to revenue increases). Lowitt stated:

> Market Making saw volumes up 22% in the market, while Marex saw revenues up 46% on volumes up by 46%. This is a consistent picture of Marex growing faster than the market, which itself is growing at a healthy rate. As we attract additional larger clients to grow share, we expect our volumes to grow somewhat faster than our revenues. I'll now hand over to Rob for a more detailed update on our financial position.

Marex Group plc, Q3 2024 Earnings Call (Nov. 7, 2024).

31.     Lowitt also attributed the growth in Securities to a "stronger performance from equities, rates and foreign exchange." *Id.*

32.     On March 6, 2025, Marex released its fourth quarter and full year 2024 financial results, reporting $6.213 billion in cash and liquid assets for 2024, representing a 39% year-over-year increase, respectively, and $44.5 million in revenue generated by Marex's Market Making segment, representing a 19% year-over-year increase but a 21% sequential decrease.  Marex Group plc, Report of Foreign Issuer (Form 6-K) at Ex-99.1 (Mar. 6, 2025).  Marex also reported $10.4 million and $35.6 million in revenue generated by securities products in Marex's Market Making segment for fourth quarter and full year 2024, representing a 206% and 40% year-over-year increase, and an 86% and 60% year-over-year decrease in trading volumes, respectively.  *Id.*

33.     During the earnings call the same day, an analyst noted that Market Making "revenues dropped off pretty significantly" and asked "what drove the weak fourth quarter?"  In response, Irvin attributed the drop to "significantly lower levels of volatility in the market . . . ."  Marex Group plc, Q4 2024 Earnings Call (Mar. 6, 2025).

34.     The above statements set forth above in ¶¶24-33 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading.  Specifically, Defendants failed to inform investors that it improperly inflated its cash flow and the revenues, assets, and profits of its Market Making segment through off-book intercompany transactions, and as a result of the above, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the Class, consisting of all persons and entities that sold short Marex securities between August 14, 2024 and August 5, 2025, inclusive, and who were

damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

36.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, millions of Marex's securities traded on the Nasdaq. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Marex or its transfer agent, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' actions as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Marex; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

<u>**UNDISCLOSED ADVERSE FACTS**</u>

41.     The market for Marex's securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Marex's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class, relying upon the integrity of the market price of the Company's securities and market information relating to Marex, short sold Marex's securities and have been damaged thereby.

42.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Marex's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Marex's business, operations, and prospects as alleged herein.

43.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Marex's financial well-being and prospects.  These material misstatements and/or omissions had the effect of creating, in the market, an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class short selling the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

44.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

45.    During the Class Period, Plaintiff and the Class short sold Marex's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities increased significantly as a result of Defendants' false and misleading statements, harming Plaintiff and the Class.

## SCIENTER ALLEGATIONS

46.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the

federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Marex, their control over, and/or receipt and/or modification of Marex's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Marex, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

47.    The market for Marex's securities was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Marex's securities traded at artificially inflated prices during the Class Period.  On May 13, 2025, the Company's share price closed at a Class Period-high of $48.33 per share.  Plaintiff and other members of the Class short sold the Company's securities relying upon the integrity of the market price of Marex's securities and market information relating to Marex, and have been damaged thereby.

48.    During the Class Period, the artificial inflation of Marex's securities was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Marex's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Marex and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's securities.  Defendants' materially false and/or misleading statements during the Class Period

resulted in Plaintiff and other members of the Class short sold the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

49.    At all relevant times, the market for Marex's securities was an efficient market for the following reasons, among others:

(a)    Marex's securities met the requirements for listing, and was listed and actively traded on the Nasdaq, a highly efficient and automated market;

(b)    as a regulated issuer, Marex filed periodic public reports with the SEC;

(c)    Marex regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Marex was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports were publicly available and entered the public marketplace.

50.    As a result of the foregoing, the market for Marex's securities promptly digested current information regarding Marex from all publicly available sources and reflected such information in Marex's securities price. Under these circumstances, all purchasers of Marex's securities during the Class Period suffered similar injury through their short sales of Marex's securities at artificially inflated prices and a presumption of reliance applies.

51.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements

and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## **NO SAFE HARBOR**

52.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Marex who knew that the statement was false when made.

17

## FIRST CLAIM

### Violation of Section 10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

53.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to short sell Marex's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each Defendant, took the actions set forth herein.

55.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the short sellers of the Company's securities in an effort to maintain artificially high market prices for Marex's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein, or as controlling persons as alleged below.

56.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails and wires, engaged and participated in a continuous course of conduct to conceal adverse material information about Marex's financial well-being and prospects, as specified herein.

57.     Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse nonpublic information and engaged in acts, practices, and a course

18

of conduct as alleged herein in an effort to assure investors of Marex's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Marex and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the short sellers of the Company's securities during the Class Period.

58.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's internal budgets, plans, projections, and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of, and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

59.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

for the purpose and effect of concealing Marex's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Marex's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class short sold Marex's securities during the Class Period and were damaged thereby.

61.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Marex was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have short sold their Marex securities, or, if they had short sold such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

62.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

64.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.     Individual Defendants acted as controlling persons of Marex within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

67.    As set forth above, Marex and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's Common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.    determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  October 9, 2025                **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                               _/s/_ Thomas L. Laughlin, IV
                                               Thomas L. Laughlin, IV (TL-8888)
                                               Matthew A. Peller (MP-2420)
                                               Mandeep S. Minhas (5799929)
                                               The Helmsley Building

230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
tlaughlin@scott-scott.com
mpeller@scott-scott.com
mminhas@scott-scott.com

*Counsel for Michaella G. Katz*

**CRIDEN & LOVE, P.A.**

/s/ Michael E. Criden
Michael E. Criden (*pro hac vice* forthcoming)
2020 Salzedo Street, Suite 302
Coral Gables, FL 33134
Telephone: (305) 375-9000

*Additional Counsel for Plaintiff Michaella G. Katz*

## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Michaella G. Katz, hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1.     I have reviewed the Complaint for Violations of the Federal Securities Laws against Marex Group plc, and authorize the filing of this Certification and a comparable complaint and/or motion for appointment as Lead Plaintiff.

2.     I am willing to serve as a representative party on behalf of the Class (as defined in the Complaint), including providing testimony at deposition and trial, if necessary.

3.     During the Class Period (as defined in the Complaint), I sold short the security that is the subject of the Complaint as set forth on the attached Schedule A.

4.     I did not engage in the foregoing transaction at the direction of counsel or in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

5.     During the three-year period preceding the date on which this Certification is signed, I have either served or sought to serve as a representative party on behalf of a class in the following private actions arising under the Securities Act or the Exchange Act:

    N/A

6.     I will not accept any payment for serving as a representative party on behalf of the Class beyond its *pro rata* share of any recovery, except for such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

1

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 8th day of October, 2025.

_Michaella Katz_
_____

Michaella G. Katz

# Schedule A

**MAREX GROUP PLC**

<span style="color:red">Class Period: 08/14/2024 to 08/05/2025</span>

**Michaella Katz**

|            | **DATE**   | **SHARES** | **PRICE** |
|------------|------------|------------|-----------|
| **Short Sale:** | 10/23/2024 | 3,500      | $24.50    |

Ticker: **MRX**     Cusip: **G5S37H101**