**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAELLA G. KATZ, Individually and on Behalf of All Others Similarly Situated, | Civil Action No.: 1:25-cv-08368 |
| Plaintiff, | CLASS ACTION |
| v. | DEMAND FOR JURY TRIAL |
| MAREX GROUP PLC, IAN THEO LOWITT, and CRISPIN ROBERT JOHN IRVIN, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY MICHAELLA G. KATZ FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND.................................................................................................... 2

ARGUMENT............................................................................................................................ 5

    I.      KATZ IS THE PRESUMPTIVE LEAD PLAINTIFF AND
           SHOULD BE APPOINTED LEAD PLAINTIFF ....................................................5

           A.     Katz Filed a Timely Motion...........................................................................6

           B.     Katz Has the Largest Financial Interest in the Relief Sought
                 by the Class ...................................................................................................7

           C.     Katz Satisfies Rule 23 ...................................................................................8

    II.     KATZ'S SELECTION OF LEAD COUNSEL SHOULD BE
           APPROVED ........................................................................................................9

CONCLUSION...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Constance Sczesny Tr. v. KPMG LLP*,
   223 F.R.D. 319 (S.D.N.Y. 2004) ........................................................................................9

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ..........................................................................................7

*In re NYSE Specialists Sec. Litig.*,
   240 F.R.D. 128 (S.D.N.Y. 2007) ........................................................................................6

*Peters v. Jinkosolar Holding Co., Ltd.*,
   2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ......................................................................7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ....................................................................................1, 9

*Taft v. Ackermans*,
   2003 WL 402789 (S.D.N.Y. Feb. 20, 2003).......................................................................8

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015)...................................................................................9

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ....................................................................................6, 8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)............................................................................7, 8

**Statutes**

15 U.S.C. §78u-4(a)(1) ...........................................................................................................5

15 U.S.C. §78u-4(a)(3)(A)....................................................................................................6, 7

15 U.S.C. §78u-4(a)(3)(B) ............................................................................................ *passim*

15 U.S.C. §§78j(b) and 78t(a)..................................................................................................1

**Other Authorities**

17 C.F.R. §240.10b-5................................................................................................................1

Federal Rules of Civil Procedure Rule 23 .......................................................................2, 6, 8, 9

ii

Plaintiff and Lead Plaintiff movant Michaella G. Katz ("Katz" or "Movant"), on behalf of herself and all others similarly situated, respectfully submits this Memorandum of Law in support of her Motion to: (1) appoint Katz as Lead Plaintiff of the above-captioned securities class action; (2) approve Katz's selection of Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Lead Counsel for the putative Class; and (3) grant such other and further relief as the Court may deem just and proper.[1]

## PRELIMINARY STATEMENT

Presently pending before the Court is a securities class action brought on behalf of persons and entities that sold short shares of Marex Group plc ("Marex" or the "Company") securities between August 14, 2024, and August 5, 2025, inclusive (the "Class Period") (the "Action"). The Action alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4(a)(3)(B) ("PSLRA"), provides that a court must appoint as lead plaintiff the "'most adequate plaintiff.'" 15 U.S.C. §78u-4(a)(3)(B)(i); *see, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004).[2] Katz is the most adequate Plaintiff because she timely moved to be Lead Plaintiff, has the largest financial interest in the litigation ($30,883 in recoverable losses), and satisfies the representative requirements set forth in

---

[1]     Defined terms have the same definitions as in the complaint filed in this Action on October 9, 2025 (the "Complaint"). ECF No. 1. Unless otherwise noted, all "¶" and "¶¶" citations refer to the Complaint.

[2]     Unless otherwise indicated, citations are omitted and emphasis is added.

Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").   *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

For the reasons summarized herein and discussed more fully below, Katz's Motion should be approved in its entirety.

## FACTUAL BACKGROUND

Plaintiff Katz filed this securities class action on October 9, 2025, against Marex and certain of its officers.   ECF No. 1.   Marex, a U.K.-based diversified global financial services platform. Marex operates five reporting segments: (1) Clearing; (2) Agency and Execution; (3) Market Making; (4) Hedging and Investment Solutions; and (5) Corporate.  ¶14.  Marex's Market Making segment provides direct liquidity to its client across a variety of products, including energy, metals, agriculture, and securities markets.  *Id.*  The segment primarily generates revenue by charging a spread between buying and selling prices.  *Id.*  Marex evaluates the performance of its Market Making segment—especially its Securities products—by tracking trade volumes, which provides an important and useful lens to view Marex's business (e.g., a higher trade volume will generate more Market Making revenue because there are more spreads to charge).  *Id.*

In 2018 and September 2021, Marex launched its Structured Notes Private Offer Program and Public Offer Program, respectively, which are at the core of its financial products business (together, the "Financial Products").  ¶15.  The Financial Products business is part of Marex's Hedging and Investment Solutions segment and provides Marex's clients with structured investment products, including Structured Notes, and represents a way to diversify Marex's sources of funding and to reduce the utilization of revolving credit facilities.  *Id.*

At first glance, its 2024 cash flow from operating activities appears strong at $1.2 billion, significantly exceeding net income of $296 million.  ¶16.  In reality, Marex includes debt issuance

2

(e.g., Structured Notes)—an inherently financing activity—in its operating cash flow. *Id.* This significantly inflates its reported free cash flow by hundreds of millions of dollars. *Id.* For example, adjusted for this accounting maneuver, Marex's operating cash flow is negative: -$150 million in 2024, -$258 million in 2023, and only modestly positive at $160 million in 2022. Free cash flow would follow a similar pattern: -$170 million in 2024, - $271 million in 2023, and $150 million in 2022. *Id.* Therefore, Marex's seemingly positive cash flow is, in fact, negative—artificially boosted by the proceeds from debt issuance. *Id.*

Marex also systematically inflates its revenues through intercompany transactions with its subsidiaries. ¶17. The number of subsidiaries owned by Marex has ballooned from eight in 2020 to 58 by the end of 2024. *Id.* Marex's use of intercompany transactions has grown in lockstep with the addition of new subsidiaries. *Id.* Relying upon this increasingly complex web of potential counterparties, Marex has often failed to properly account for the cashflow in the intercompany transactions—improperly recognizing revenue between its entities and failing to book corresponding receivables and payables. *Id.*

Marex's investments with, and eventual acquisition of, Volatility Performance Fund SA SICAV-RAIF ("VPF") is a clear example of Marex's off-book machinations. ¶18. In 2018, VPF, which BIP Asset Management and BIP Trading (UK) Limited (together, "BIP Trading") launched as a volatility arbitrage strategy across multiple asset classes, had shifted its operations by 2018 to trade almost exclusively with Marex. VPF's financial statements for the year ending in March 31, 2019 establishes that Marex served not just as a broker and custodian, but effectively as the sole counterparty to VPF's trades. *Id.* The market turmoil in March 2020 caused VPF to generate an overdraft exceeding EUR 16.7 million and effectively wiped-out EUR 47 million by the end of 2020. *Id.*

3

Given Marex's significant exposure to VPF as its sole counterparty at the time of the market turmoil, Marex bailed out VPF by recapitalizing it and purchasing all shares on March 24, 2020, then by acquiring BIP Trading and VPF's investment advisor. ¶19. Marex's Board neither reviewed nor approved these transactions, marking a significant deviation from Marex's established governance procedures. *Id.*

In 2021, VPF would have once again wiped out its Net Asset Value ("NAV") were it not for Marex's dubious accounting treatment. ¶20. Specifically, Marex's recapitalization of VPF was recorded twice: first, as "Other income" in VPF's statement of operations for the fiscal year ending March 31, 2020, with a corresponding receivable on its balance sheet; and again as a subscription in the subsequent fiscal year. *Id.* The fund continued to operate through FY 2021 and FY 2022, maintaining hundreds of millions of dollars in derivative positions. *Id.* Since Marex is both the sole investor in the fund and effectively its only counterparty—across brokerage, trading, and execution through various subsidiaries—the company should have consolidated the fund's assets and liabilities and properly reflected the associated market exposure on its own balance sheet. *Id.* Marex excluded VPF from its firm-wide Value-at-Risk model and stress tests from 2020 to 2022, despite being the sole investor, trading counterparty, and manager of the fund and its substantial derivatives exposure. It was only included in 2023—after Marex quietly transferred all risk-bearing assets to the Marex Fund, another off-balance sheet entity, in December 2022. *Id.* The Marex Fund reported more than $930 million in derivatives on the Company's only published accounts to date, dated December 31, 2022. *Id.* The Marex Fund was not included in any of Marex's Value-at-Risk model. *Id.*

More than once, regulators have successfully untangled Marex's web of intercompany transactions to discover improprieties. ¶21. For example, in 2020, the Commodity Futures

4

Trading Commission fined Marex and certain of its subsidiaries after finding the Company hid that it had been undercapitalized for 33 months by failing to recognize an intercompany loan.  *Id.*

Additionally, Marex has had constant restatements in the last three consecutive years.  ¶22. For example: (i) in 2024, Marex restated its 2023 consolidated balance sheet by $138.5 million due to an error in the presentation of certain derivative instruments; (ii) in 2023, Marex restated its 2022 revenue by $633 million, Marex's main subsidiary, Marex Financial, restated its 2022 income statement by lowering it by $118.3 million, restated its Property, Plant, and Equipment line item, and restated the amount non-current and current of its issued debt securities; and (iii) in 2022, Marex restated its balance at a prime broker, and also restated its 2021 receivables and derivatives position, lowering the assets by $1.23 billion and the liabilities by $1.16 billion, resulting in a $71 million lower equity.  *Id.*  These repeated restatements point to more than just isolated accounting errors—they suggest deeper structural and control weaknesses within Marex's financial reporting.  *Id.*  The frequency, scale, and nature of these adjustments raise serious questions about the reliability of Marex's reported numbers, especially in light of the company's sprawling and increasingly opaque group structure.  *Id.*

Throughout the Class Period, Defendants inflated earnings results by inflating cash flow and misreporting intercompany transactions.  ¶23.

## ARGUMENT

I.    **KATZ IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *id.* at (a)(3)(B).  First, the plaintiff

5

who files the action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice"). 15 U.S.C. §78u-4(a)(3)(A)(i).  Second, within 60 days after publication of the Early Notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i)(II)-(B)(iii)(I).

Finally, "the Court is required to appoint the 'most adequate plaintiff' as lead plaintiff." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 141 (S.D.N.Y. 2007) (quoting 15 U.S.C. §78u-4(a)(3)(B)(i)).  Under this Exchange Act provision, "the 'most adequate plaintiff' [is] determined by a two-step competitive process." *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343 (S.D.N.Y. 2009).  First, the Exchange Act provides that the court is to presume the "most adequate plaintiff" to be the class member who: (a) "has either filed [a] complaint or made a motion [for lead plaintiff] in response to a notice"; (b) "has the largest financial interest in the relief sought"; and (c) "otherwise satisfies the requirements of Rule 23."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc); *see also Tronox*, 262 F.R.D. at 343-44.  The Rule 23 element of the presumption necessitates only a "'preliminary showing that [the movant] satisfies the typicality and adequacy requirements of Rule 23.'" *Tronox*, 262 F.R.D. at 344.  Second, so long as the presumption is not rebutted, the "most adequate plaintiff" shall be appointed the lead plaintiff.  *Id.*  As demonstrated below, Katz meets these requirements and should be appointed to serve as Lead Plaintiff.

### A.    Katz Filed a Timely Motion

On October 9, 2025, the same day this Action was filed, a notice of pendency of the Action was published on *Globe Newswire*, a national newswire service.  *See* Declaration of Thomas L. Laughlin, IV ("Laughlin Decl.") filed in support hereof, Ex. A.  The requirements of §78u-4(a)(3)(A)(i) have, therefore, been met.  The Early Notice states that those wishing to serve as

Lead Plaintiff are required to move for appointment "no later than December 8, 2025" (*i.e.*, within 60 days of publication of the Early Notice). *See id.*

Katz's motion for appointment as Lead Plaintiff is therefore timely filed. Moreover, Katz has submitted a certification stating her willingness to serve as a representative party on behalf of the Class and providing her Class Period transactions. *See* Laughlin Decl., Ex. C.

### B. Katz Has the Largest Financial Interest in the Relief Sought by the Class

To her knowledge, Katz is the Lead Plaintiff movant with the largest financial interest in the relief sought by the Class. "Courts in this District generally look at the following factors to determine financial interest: '(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period . . .; (3) the net funds expended during the class period . . .; and (4) the approximate losses suffered.'" *Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *5 (S.D.N.Y. Mar. 19, 2012) (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)). "It is well settled that '[f]inancial loss, the last factor, is the most important element of the test.'" *Id.* (citing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)) (alteration in original).

As evidenced by her PSLRA certification and the charts detailing her transactions and losses, Katz sold short Marex securities during the Class Period and suffered losses as a result of Defendants' misconduct. *See* Laughlin Decl., Exs. B & C. Specifically, Katz suffered losses of approximately $30,883.20. Laughlin Decl., Ex. B.

Katz thus has a significant financial interest in this case. Moreover, Katz is unaware of any other movant that has sustained greater financial losses in connection with their Marex transactions during the Class Period. Therefore, Katz has the "largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

7

### C.    Katz Satisfies Rule 23

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at (B)(iii)(I)(cc). Of the Rule 23 prerequisites, only two − typicality and adequacy − directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a motion to appoint lead plaintiff, the Court need only make findings as to the typicality and adequacy of the proposed lead plaintiff and, at this stage, those findings need only be "'preliminary.'" *Tronox*, 262 F.R.D. at 344. Katz easily makes this preliminary showing.

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (internal quotations omitted). Here, the claims asserted by Katz are typical of the claims of the other members of the putative Class because, like all other Class members, she: (a) sold short shares of Marex securities during the Class Period; (b) was adversely affected by Defendants' allegedly false and misleading statements and omissions; and (c) suffered damages as a result thereof. Since Katz's claims are based on the same legal theories and arise from the same event, practice, or course of conduct that gives rise to the claims of other Class members, typicality is satisfied. *See Varghese*, 589 F. Supp. 2d at 397; *Taft v. Ackermans*, 2003 WL 402789, at *3 (S.D.N.Y. Feb. 20, 2003).

A plaintiff is an adequate class representative when he possesses common interests and an absence of conflict with fellow class members and the plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation. *See Tronox*, 262 F.R.D. at 343. Katz

is adequate to serve as Class representative in the instant litigation because her interests are aligned with the interests of the putative Class. Katz, like all other members of the Class, suffered losses as a result of selling short Marex securities at prices that were artificially inflated due to Defendants' alleged misstatements. Katz will, therefore, benefit from the same relief as other Class members. Finally, Katz has demonstrated that she is an adequate representative by retaining competent and experienced counsel. *See LaBranche*, 229 F.R.D. at 413 (considering qualifications of proposed lead counsel in evaluating adequacy); *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) (same). As shown below, Scott+Scott is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Accordingly, Katz has made a *prima facie* showing that she satisfies all of the requirements of Rule 23 for the purposes of this motion.

## II.    KATZ'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). In making this determination, a court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class[.]" *Id.* at (B)(iii)(II)(aa). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015).

Katz has selected the law firm of Scott+Scott to represent the Class. Scott+Scott has substantial experience in the prosecution of securities fraud class actions and possesses the necessary resources to efficiently conduct this litigation. *See* Laughlin Decl., Ex. D. Specifically, Scott+Scott has served as lead or co-lead counsel in many high-profile class actions and recovered

9

hundreds of millions of dollars for victims of corporate fraud. [3]  Also, Scott+Scott currently serves

as lead or co-lead counsel in numerous securities class actions pending in several U.S. District

Courts. [4]

In light of the foregoing, the Court should approve Katz's selection of Scott+Scott as Lead

Counsel.  The Court can be assured that by approving Katz's choice of Lead Counsel, the putative

Class will receive the highest caliber of representation.

---

[3]      Recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, include: *Okla. Firefighters Pension & Ret. Sys. v. Newell Brands Inc.,* HUD-L-003492-1 (Hudson Cnty. N.J. Super. Ct. NJ) ($102.5 million); *Weston v. RCS Cap. Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am.*, *N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million); *Irvine v. ImClone Sys.*, *Inc.*, No. 1:02-cv-00109 (S.D.N.Y.) ($75 million); *In re Micro Focus Int'l plc Sec. Litig.*, Lead Case No. 18-cv-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455 (N.D. Cal.) ($50 million); *In re Priceline.com Inc. Sec. Litig.*, No. 3:00-cv-01844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 2:99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 8:01-cv-00219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cnty.) ($50 million); *In re Nw. Corp. Sec. Litig.*, No. 4:03-cv-04049 (D.S.D.) ($61 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 3:02-cv-02133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million); *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.) ($13 million).

[4]      *See, e.g.*, Current Lead Counsel Appointments: *Severt v. UiPath, Inc.*, No. 1:23-cv-07908 (S.D.N.Y.); *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 1:23-cv-01769 (S.D.N.Y.); *Tcherkezian v. Ibotta, Inc.*, No. 1:25-cv-01213 (D. Col.); *Jewik v. TransMedics Group, Inc.*, No. 1:25-cv-10385 (D. Mass.); *Giraudon v. Innovative Industrial Properties, Inc.*, No. 1:25-cv-00182 (D. Md.); *White v. Brooge Energy Limited*, No. 2:24-cv-00959 (C.D. Cal.); *Rondini v. Kyverna Therapeutics, Inc.*, No. 3:24-cv-08869 (N.D. Cal.); *Marselis v. Fox Factory Holding Corp.*, No. 1:24-cv-00747 (N.D. Ga.); *City of Southfield Fire & Police Retirement System v. Hayward Holdings, Inc.*, 2:23-cv-04146 (D.N.J.); *Sundaram v. Freshworks, Inc.*, No. 3:22-cv-06750 (N.D. Cal.); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms. Inc.*, No. 3:21-cv-00762 (S.D. Cal.); *Golubowski v. Robinhood Mkts., Inc.*, No. 3:21-cv-09767 (N.D. Cal.).

## CONCLUSION

For all the foregoing reasons, Katz respectfully requests that the Court: (1) appoint Katz as

Lead Plaintiff on behalf of the Class; (2) approve Katz's selection of counsel, Scott+Scott, as Lead

Counsel; and (3) grant such other and further relief as the Court may deem just and proper.

DATED:  December 8, 2025                     **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 s/ Thomas L. Laughlin, IV
Thomas L. Laughlin, IV
Mandeep S. Minhas
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
mminhas@scott-scott.com

*Counsel for Lead Plaintiff Movant Michaella G. Katz and Proposed Lead Counsel for the Class*

11

## CERTIFICATE OF COMPLIANCE
(Local Rule 7.1(c))

The undersigned counsel certifies that this Memorandum of Law complies with the length limits permitted by Local Rule 7.1(c). The brief is 3,190 words and 11 pages, excluding the portions exempted by Local Rule 7.1(c), if applicable, and uses a proportionally spaced Times New Roman typeface, 12-point in compliance with Local Rule 7.1(b)(1).

　s/　Thomas L. Laughlin, IV
Thomas L. Laughlin, IV

*Counsel for Lead Plaintiff Movant Michaella G. Katz and Proposed Lead Counsel for the Class*

12

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

 s/  Thomas L. Laughlin, IV

Thomas L. Laughlin, IV

13