**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>Michaella G. Katz, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    -against-<br><br>Marex Group PLC, et al.,<br><br>        Defendants.</td><td>1:25-cv-08368 (RA) (SDA)<br><br><u>OPINION AND ORDER</u></td></tr>
<tr><td>Ravishanker Narayanan, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    -against-<br><br>Marex Group PLC, et al.<br><br>        Defendants.</td><td>1:25-cv-08393 (RA) (SDA)</td></tr>
</table>

**STEWART D. AARON, United States Magistrate Judge:**

Pending before the Court are the following motions:

(1) in the case entitled *Katz v. Marex Group PLC et al.*, No. 25-CV-08368 (RA) (SDA) (S.D.N.Y.) (the "*Katz* Action"), (a) a motion by Michaella G. Katz ("Katz"), pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), to appoint Katz as the lead plaintiff and to approve Katz's selection of Scott+Scott Attorneys at Law LLP ("Scott+Scott") as lead counsel for the putative class (Katz 12/8/25 Not. of Mot., 25-CV-08368 ECF No. 17); and (b) a cross-motion by Defendants Marex Group PLC ("Marex"), Ian Lowitt

("Lowitt") and Robert Irvin ("Irvin") (collectively, the "Defendants"), pursuant to Rule 42(a) of the Federal Rules of Civil Procedure and the PSLRA, to consolidate the *Katz* Action with the action entitled *Narayanan v. Marex Group PLC et al.*, No. 25-CV-08393 (JPC) (SDA) (S.D.N.Y.) (the "*Narayanan* Action") and to appoint lead plaintiff(s) in the consolidated action (Defs.' 1/9/26 Not. of Cross-Mot., 25-CV-08368 ECF No. 21); and

(2) in the *Narayanan* Action, (a) a motion by Judy Joos ("Joos") to appoint Joos as the lead plaintiff and to approve Joos's selection of The Rosen Law Firm, P.A. as lead counsel for the putative class (Joos 12/8/25 Not. of Mot., 25-CV-08393 ECF No. 21), (b) a motion by Ravishanker Narayanan ("Narayanan") to appoint Narayanan as the lead plaintiff and to approve Narayanan's selection of Glancy Prongay & Murray LLP ("GPM") and Holzer & Holzer, LLC as co-lead counsel for the putative class (Narayanan 12/8/25 Not. of Mot., 25-CV-08393 ECF No. 23), (c) a motion by Ali Shahsavanpour ("Shahsavanpour") and Jaimin Patel ("Patel" and, together with Shahsavanpour, "S&P") as co-lead plaintiffs and to approve S&P's selection of The Schall Law Firm (the "Schall Firm") as counsel for the putative class (S&P 12/8/25 Not. of Mot., 25-CV-08393 ECF No. 26), and (d) a cross-motion by Defendants to consolidate the *Katz* Action with the *Narayanan* Action and to appoint lead plaintiff(s) in the consolidated action. (Defs.' 1/9/26 Not. of Cross-Mot., 25-CV-08393 ECF No. 31.)[1]

For the reasons set forth below, the motion by Katz is GRANTED, the motion by S&P is GRANTED, the motions by Joos and Narayanan are DENIED AS MOOT and the cross-motions by

---

[1] The same cross-motion was filed by Marex, Lowitt and Irvin in both the *Katz* Action and the *Narayanan* Action.

Defendants are DENIED WITHOUT PREJUDICE, and it is hereby ORDERED that the *Katz* Action and *Narayanan* Action shall be coordinated for discovery and case management purposes.

## BACKGROUND

The *Katz* Action and the *Narayanan* Action are two related securities class actions[2] pending against Marex, Lowitt and Irvin. (*See* Katz Compl., 25-CV-08368 ECF No. 1, ¶ 1; Narayanan Compl., 25-CV-08393 ECF No. 1, ¶ 1.) The *Katz* Action is brought on behalf of a putative class of all persons and entities that sold short Marex securities between August 14, 2024 and August 5, 2025, inclusive, and who were damaged thereby. (Katz Compl. ¶ 35.) The *Narayanan* Action is brought on behalf of a putative class of all persons and entities that purchased or otherwise acquired Marex securities between May 16, 2024 and August 5, 2025, inclusive, and who were damaged thereby. (Narayanan Compl. ¶ 33.)

Both actions allege that Defendants defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). (*See* Katz Compl. ¶¶ 53-67; Narayanan Compl. ¶¶ 51-65.) In addition, both actions allege that Defendants made materially false and/or misleading statements, and failed to disclose material adverse facts about Marex's business, operations and prospects. (*See* Katz Compl. ¶¶ 3, 24-34; Narayanan Compl. ¶¶ 5, 18-27.) On August 5, 2025, the last day of the putative class period in both actions, NINGI Research published a report stating, among other things, that Marex "ha[d] engaged in a multi-year accounting scheme involving a web of opaque off-balance-sheet entities, fictitious

---

[2] In the *Narayanan* Action, GPM filed a Statement of Relatedness stating that the *Katz* Action and the *Narayanan* Action "concern the same or similar underlying facts and events during a similar period of time." (Relatedness Stmt., 25-CV-08393 ECF No. 7, at 2.)

intercompany transactions, and misleading disclosures to conceal significant losses, inflate profits, and mask its true risk exposure." (Narayanan Compl. ¶ 28.)

## PROCEDURAL HISTORY

On October 9, 2025, the *Katz* Action was initiated by filing the Complaint in that action. (*See* Katz Compl.) That same day, Scott+Scott published a notice of the pendency of the action on *Globe Newswire*, which alerted investors to the December 8, 2025 deadline for an individual to seek "lead plaintiff" status, *i.e.*, no later than 60 days after the date of the notice. (Laughlin Decl., 25-CV-08368 ECF No. 18, ¶ 3; Ex. A to Laughlin Decl., 25-CV-08368 ECF No. 18-1.)

Also on October 9, 2025, the *Narayanan* Action was initiated by filing its respective Complaint. (*See* Narayanan Compl.) That same day, GPM published notice of the pendency of that action on *Business Wire*, which alerted investors that they had sixty days from the date of the notice to move the Court to serve as lead plaintiff. (Linkh Decl., 25-CV-08393 ECF No. 25, ¶ 2; Ex. A to Linkh Decl., 25-CV-08393 ECF No. 25-1.)

On December 8, 2025, the various motions now before the Court for appointment as lead plaintiff were filed in both the *Katz* Action and the *Narayanan* Action, along with supporting papers. (*See* Katz 12/8/25 Not. of Mot.; Laughlin Decl.; Katz 12/2/25 Mem., 25-CV-08368 ECF No. 19; Joos 12/8/25 Not. of Mot.; Joos 12/8/25 Mem., 25-CV-08393 ECF No. 22; Narayanan 12/8/25 Not. of Mot.; Linkh Decl.; Narayanan 12/8/25 Mem., 25-CV-08393 ECF No. 24; S&P 12/8/25 Not. of Mot.; S&P 12/8/25 Mem., 25-CV-08393 ECF No. 27; Goldstein Decl., 25-CV-08393 ECF No. 28.) On December 22, 2025, Joos filed a notice of non-opposition to the competing motions for appointment as lead plaintiff, stating that she did "not appear to have the largest financial interest in this litigation within the meaning of the PSLRA." (Joos Non-Opp., 25-CV-08393 ECF No.

4

29.) On January 9, 2026, Narayanan filed a notice of non-opposition to the competing motions for appointment as lead plaintiff, stating that "it appear[ed] that Ali Shahsavanpour and Jaimin Patel . . . ha[d] a larger financial interest than Narayanan." (Narayanan Non-Opp., 25-CV-08393 ECF No. 30.) Also on January 9, 2026, S&P filed a reply memorandum in the *Narayanan* Action noting, among other things, that their motion for appointment as co-lead plaintiffs was unopposed. (S&P 1/9/26 Reply, 25-CV-08393 ECF No. 33. at 1.)

In addition, on January 9, 2026, Defendants filed in both actions their motion to consolidate, with an accompanying memorandum of law. (*See* Defs.' 1/9/26 Not. of Cross-Mot.; Defs.' 1/9/26 Mem., 25-CV-08368 ECF No. 22, 25-CV-08393 ECF No. 32.) On January 15, 2026, Katz filed a memorandum in opposition to the cross-motion. (Katz 1/15/26 Opp. Mem., 25-CV-08368 ECF No. 24.) On January 20, 2026, the two actions were referred to the undersigned for general pretrial purposes and to decide the pending non-dispositive motions that now are before the Court.[3] (Order of Ref., 25-CV-08368 ECF No. 26, 25-CV-08393 ECF No. 38.)

On January 23, 2026, S&P filed a memorandum in opposition to Defendants' cross-motion to consolidate. (S&P 1/23/26 Opp. Mem., 25-CV-08393 ECF No. 39.) On January 30, 2026, Defendants filed the same reply memorandum in both actions in further support of their motion to consolidate. (Defs.' 1/30/26 Reply, 25-CV-08368 ECF No. 27, 25-CV-08393 ECF No. 40.)

---

[3] "An order appointing lead plaintiff and approving lead counsel qualifies as a nondispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure, allowing this Court to issue a written order (*i.e.*, a Memorandum and Order) rather than a recommended disposition (*i.e.*, a Report and Recommendation)." *Darish v. N. Dynasty Mins. Ltd.*, No. 20-CV-05917 (ENV), 2021 WL 1026567, at *1 n.3 (E.D.N.Y. Mar. 17, 2021) (citing Fed. R. Civ. P. 72(a)). In addition, "a motion to consolidate is a nondispositive motion." *Dimitrov v. United States*, No. 25-CV-07420 (JHR) (SLC), 2026 WL 228448, at *1 (S.D.N.Y. Jan. 28, 2026) (citing cases).

## DISCUSSION

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed," courts must decide a motion for consolidation made by any party before appointing the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thus, the Court first addresses Defendants' cross-motions, which seek to consolidate the *Katz* Action and the *Narayanan* Action for pre-trial and trial purposes (*see* Defs.' 1/9/26 Not. of Cross-Mot. at 2) before addressing the motions to appoint lead plaintiffs.

I.      **Consolidation**

A.      **Legal Standards**

"[C]onsolidation is not mandatory under the PSLRA." *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 487 (S.D.N.Y. 2013) (citing cases). Rule 42(a) of the Federal Rules of Civil Procedure governs the consolidation of actions. Rule 42(a) provides:

[i]f actions before the court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions;

(2) consolidate the actions; or

(3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

Rule 42(a) "empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay." *Garnett-Bishop v. New York Community Bancorp, Inc.*, 299 F.R.D. 1, 5 (E.D.N.Y. 2014) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)). "Differences in causes of action [or] defendants . . . do not render consolidation inappropriate" where (1) "the cases present sufficiently common questions of fact

6

and law," and (2) "the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007).

"The trial court has broad discretion to determine whether consolidation is appropriate." *Johnson*, 899 F.2d at 1284. "[Rule 42(a)] should be prudently employed as a valuable and important tool of judicial administration, invoked to expedite trial and eliminate unnecessary repetition and confusion[.]" *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (quotation marks and citations omitted). The Second Circuit, however, has noted that "[a] district court should consider both equity and judicial economy" in assessing whether to consolidate, and "efficiency cannot be permitted to prevail at the expense of justice[.]" *Id*.

In exercising its discretion, the Second Circuit requires that the district court consider the following factors:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Johnson*, 899 F.2d at 1285 (citation omitted).

"A party moving for consolidation must bear the burden of showing the commonality of factual and legal issues in different actions." *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993); *see Liberty Media Corp. v. Vivendi Universal, S.A.*, 842 F. Supp. 2d 587, 592 (S.D.N.Y. 2012) (same).

### B.    Application

In their cross-motions, Defendants argue that consolidation of the *Katz* Action and the *Narayanan* Action is appropriate since the "two actions involve almost identical questions of law

and fact." (*See* Defs.' 1/9/26 Mem. at 3; *see also* Defs.' 1/30/26 Reply at 1-2.) Plaintiffs in both actions argue that there should be no consolidation because the putative class in the *Katz* Action differs from the putative class in the *Narayanan* Action, and the lead plaintiff in the *Katz* Action could not lead a consolidated class action representing the long-purchasers in the Narayanan Action.[4] (Katz 1/15/26 Mem. at 5; S&P 1/23/26 Mem. at 5.) The Court agrees with Plaintiffs.

In the *Katz* Action, the class consists of short sellers. (*See* Katz Compl. ¶ 35.) In the *Narayanan* Action, the class consists of those who purchased or otherwise acquired Marex securities (thereby going "long"). (*See* Narayanan Compl. ¶ 33.) There is a fundamental difference between long and short positions in securities.

> Having a "long" position in a security means that you own the security. Investors maintain "long" security positions in the expectation that the stock will rise in value in the future. The opposite of a "long" position is a "short" position.
>
> A "short" position is generally the sale of a stock you do not own. Investors who sell short believe the price of the stock will decrease in value. If the price drops, you can buy the stock at the lower price and make a profit. If the price of the stock rises and you buy it back later at the higher price, you will incur a loss.

U.S. Secs. & Exchange Comm. Website, *Stock Purchases and Sales: Long and Short*, https://perma.cc/C23H-JEC8 (last accessed Feb. 1, 2026).

"[S]hort sales call into question a plaintiff's typicality among other investors in the class because, while the typical investor loses money when the price of the security decreases, short sellers profit." *Schaeffer v. Depaolo*, No. 23-CV-01921 (FB) (JRC), 2023 WL 5153481, at *7 (E.D.N.Y. Aug. 10, 2023). There is "abundant case law declining to appoint lead plaintiffs who

---

[4] Plaintiffs also argue that the two Complaints rely on different alleged misrepresentations. (Katz 1/15/26 Mem. at 6; S&P 1/23/26 Mem. at 6.) However, the Court finds that, as noted by Defendants (Defs.' 1/9/26 Mem. at 4), the two Complaints rely on substantially similar alleged misrepresentations over a substantially overlapping period.

engage in short selling of the securities at issue in the litigation." *Id*. (citing cases). Thus, the lead short-selling plaintiff in the *Katz* Action could not represent the class of long purchasers in the *Narayanan* Action. Conversely, the lead long-purchasing plaintiff(s) in the *Narayanan* Action could not adequately represent the class of short sellers in the *Katz* Action, given their divergent interests.

Having carefully considered the record in the two actions, the Court is satisfied that the interests of the Plaintiffs in the two actions are sufficiently diverse that it would be inappropriate to consolidate the two cases and have them proceed with a single, consolidated Complaint. The Court, in its discretion, finds that an intermediate approach is warranted.

Under Rule 42(a), the Court has authority to coordinate rather than consolidate the two actions. *See* Fed. R. Civ. P. 42(a)(3) ("If actions before the court involve a common question of law or fact, the court may . . . issue any other orders to avoid unnecessary cost or delay"). Such an approach has been used in other cases in this District. *See In re New Oriental Educ*., 293 F.R.D. at 487-89 (holding that action by option holder, as opposed to stock purchasers, would "proceed separately on a related, but not consolidated basis with the consolidated securities action"). In the present case, the Court finds that coordination of the two actions for discovery and case management purposes will avoid unnecessary cost and avoid or at least ameliorate any prejudice to Defendants.

Accordingly, Defendants' motion to consolidate is DENIED WITHOUT PREJUDICE,[5] and it is hereby ORDERED that the *Katz* Action and the *Narayanan* Action shall be coordinated for discovery and case management purposes.

## II.    Appointment Of Lead Plaintiffs

### A.    Legal Standards

The PSLRA governs the process for appointing a lead plaintiff in a private securities class action. "Even when a motion to appoint lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff." *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 325 F. Supp. 3d 310, 314 (E.D.N.Y. 2018) (citing *Springer v. Code Rebel Corp.*, No. 16-CV-03492 (AJN), 2017 WL 838197 at *1 (S.D.N.Y. Mar. 2, 2017)).

Under the PSLRA, the Court must adopt a presumption that the most adequate plaintiff is the person or group of persons that:

(aa)    has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). Once the presumption is established, it only may be rebutted with proof that the presumptive lead plaintiff "will not fairly and adequately protect

---

[5] The Court is not foreclosing the possibility of consolidation of the two cases at a later point, as the cases proceed to trial. *See In re Repetitive Stress Inj. Litig.*, 11 F.3d at 372 ("consolidation orders may be modified or revised as the litigation proceeds").

the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

The PSLRA requires that a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period[,]" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II).

The PSLRA does not prescribe a specific methodology to be used in considering the "largest financial interest." *Million v. Lottery.com Inc.*, No. 22-CV-07111 (JLR), 2022 WL 17076749, at *2 (S.D.N.Y. Nov. 18, 2022) (quoting *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008)). Courts in the Second Circuit generally consider four factors: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Fuwei Films*, 247 F.R.D. at 437437 (citing *In re Olsten*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. May 4, 1998)); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004) (collecting cases). Importantly, "[m]ost courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures." *Zawatsky v. Vroom, Inc.*, No. 21-CV-02477 (PGG), 2021 WL 3498191, at *5 (S.D.N.Y. Aug. 6, 2021) (quoting *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011)); *see Kaplan*, 240 F.R.D. at 93 ("[W]e . . . shall place the most

11

emphasis on the last of the four factors: the approximate loss suffered by the movant.")
(collecting cases).

The Rule 23 requirements for class certification are commonly referred to as numerosity, commonality, typicality and adequacy of representation. *See Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 80 (2d Cir. 2015). At this early stage of litigation, however, "'only the last two factors—typicality and adequacy—are pertinent.'" *Lopez v. CTPartners Exec. Search Inc.*, No. 15-CV-01476 (PAE), 2015 WL 2431484, at *2 (S.D.N.Y. May 18, 2015) (quoting *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)). A lead plaintiff's claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173-74 (S.D.N.Y. 2010) (cleaned up); *see also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). A lead plaintiff is adequate where he "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 189 (S.D.N.Y. 2006) (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 126 (S.D.N. Y, 2000)). To obtain appointment as lead plaintiff, "[t]he moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Weinberg v. Atlas Air Worldwide Holdings. Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003).

**B.      Application**

**1.      Lead Plaintiff in the *Katz* Action**

The Court finds that Katz meets the three statutory requirements of the PSLRA to be the presumptive most adequate plaintiff.

On October 9, 2025, the statutory notice of the *Katz* Action was published on *Globe Newswire*. (Laughlin Decl. ¶ 3; Ex. A to Laughlin Decl.) On December 8, 2025, Katz filed his motion now before the Court for appointment as lead plaintiff. (*See* Katz 12/8/25 Not. of Mot.) Thus, Katz's motion is timely and he satisfies the first requirement to become the presumptive lead plaintiff.

Katz believes that she has the largest financial interest in relief sought having incurred a suffered losses of approximately $30,883.20 during the class period. (Katz 12/8/25 Mem. at 7; Ex. B to Laughlin Decl., 25-CV-08368 ECF No. 18-2.) Because no prospective lead plaintiff with a larger financial stake in this case has come forward, and the Court does not have access to non-parties' financial records, the Court must assume that Katz's financial interest renders her suitable to serve as lead plaintiff. *See Li v. Spirit AeroSystems Holdings, Inc.*, No. 23-CV-03722 (PAE), 2023 WL 6938285, at *2 (S.D.N.Y. Oct. 20, 2023). Thus, the second requirement to become the presumptive lead plaintiff has been satisfied. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

Katz's claims are "typical of the class because [her] claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *Li*, 2023 WL 6938285, at *2 (cleaned up). Katz herself sold short Marex securities on October 23, 2024 (Katz Cert., 25-CV-08368 ECF No. 18-3), and the *Katz* Complaint alleges that she "brings this action as a class action . . . on behalf of the Class, consisting of all persons and entities that sold short Marex securities

13

between August 14, 2024 and August 5, 2025 . . ..." (Katz Compl. ¶ 35.) Accordingly, Katz's claims arise from the same course of conduct as other class members' claims.

On the record before the Court, Katz is also an adequate class representative. Katz has certified that she is willing to serve as class representative, including providing testimony at deposition and trial. (Katz Cert. ¶ 2.) Katz also selected and retained capable counsel. (*See* Discussion Section III.B.1., *infra*.) There is no indication that Katz has any interests that are antagonistic to those of the short-seller class.

Because Katz has satisfied the PSLRA requirements, the Court finds that she is the most adequate plaintiff.[6] The Court therefore appoints Katz as lead plaintiff in the *Katz* Action.

### 2.    Lead Plaintiffs In *Narayanan* Action

The Court finds that Shahsavanpour and Patel meet the three statutory requirements of the PSLRA to be the presumptive most adequate plaintiffs.

On October 9, 2025, the statutory notice of the *Narayanan* Action was published on *Business Wire*. (Linkh Decl. ¶ 2; Ex. A to Linkh Decl.) On December 8, 2025, Shahsavanpour and Patel filed their motion now before the Court for appointment as co-lead plaintiffs. (*See* S&P 12/8/25 Not. of Mot.) Thus, the motion by Shahsavanpour and Patel is timely and they satisfy the first requirement to become the presumptive lead plaintiffs.

Shahsavanpour and Patel believe that they have the largest financial interest in relief sought having incurred a suffered losses of approximately $31,862 during the class period. (S&P 12/8/25 Mem. at 6; Ex. B to Goldstein Decl., 25-CV-08393 ECF No. 28-2.) Because no prospective

---

[6] The Court notes that no rebuttal evidence has been submitted to show that Katz "will not fairly and adequately protect the interests of the class" or that she is subject to "unique defenses" that render her incapable of adequately representing the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

lead plaintiff with a larger financial stake in this case has come forward, the other movants who sought lead plaintiff status in the *Narayanan* Action have indicated their non-opposition (*see* Narayanan Non-Opp.; Joos Non-Opp.) and the Court does not have access to non-parties' financial records, the Court must assume that the collective financial interests of Shahsavanpour and Patel render them suitable to serve as lead plaintiffs. *See Li*, 2023 WL 6938285, at *2. Thus, the second requirement to become the presumptive lead plaintiffs has been satisfied. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

The claims of Shahsavanpour and Patel are "typical of the class because [their] claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *Li*, 2023 WL 6938285, at *2 (cleaned up). Shahsavanpour and Patel purchased Marex securities on numerous occasions during the class period and suffered substantial losses. (Joint S&P Decl., 25-CV-08393 ECF No. 28-4, ¶¶ 2-3.) Accordingly, the claims of Shahsavanpour and Patel arise from the same course of conduct as other class members' claims.

On the record before the Court, Shahsavanpour and Patel are also adequate class representatives. They have certified that they are prepared to fulfill the responsibilities and requirements of being a lead plaintiff in a securities class action. (Joint S&P Decl. ¶ 4.) Shahsavanpour and Patel also selected and retained capable counsel. (*See* Discussion Section III.B.2., *infra*.) There is no indication that Shahsavanpour and Patel have any interests that are antagonistic to those of the short-seller class.

Because Shahsavanpour and Patel have satisfied the PSLRA requirements, the Court finds that they are the most adequate plaintiffs.[7] The Court therefore appoints them as lead plaintiffs in the *Narayanan* Action.

### III.    Approval Of Appointment Of Lead Counsel

#### A.    Legal Standards

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly selected lead plaintiff's decisions as to counsel selection." *Moore v. Checkpoint Therapeutics, Inc.*, No. 24-CV-02613 (PAE), 2024 WL 3090623, at *3 (S.D.N.Y. June 21, 2024) (cleaned up).

#### B.    Application

##### 1.    Lead Counsel In *Katz* Action

Katz has selected Scott+Scott to represent the class. (Katz 12/8/25 Mem. at 9.) Having reviewed Scott+Scott's submissions as to its pertinent background and experience, including its experience litigating securities class actions (Scott+Scott Firm Resume, 25-CV-08368 ECF No. 18-4; Katz 12/8/25 Mem. at 9-10), the Court finds that Scott+Scott is well qualified to serve as lead counsel. Accordingly, the Court hereby approves Katz's selection of Scott+Scott as lead counsel in the *Katz* Action.

---

[7] The Court notes that no rebuttal evidence has been submitted to show that Shahsavanpour and Patel "will not fairly and adequately protect the interests of the class" or that they are subject to "unique defenses" that render them incapable of adequately representing the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**2.**    **Lead Counsel In *Narayanan* Action**

Shahsavanpour and Patel have selected the Schall Firm to represent the class. (S&P 12/8/25 Mem. at 9-10.) Having reviewed the Schall Firm's submissions as to its pertinent background and experience, including its experience litigating securities class actions (Schall Firm Resume, 25-CV-08393 ECF No. 28-5; S&P 12/8/25 Mem. at 9-10), the Court finds that the Schall Firm is well qualified to serve as lead counsel. Accordingly, the Court hereby approves the selection of the Schall Firm as lead counsel in the *Narayanan* Action.

### CONCLUSION

For the foregoing reasons, the motion by Katz is GRANTED, the motion by S&P is GRANTED, the motions by Joos and Narayanan are DENIED AS MOOT and the cross-motions by Defendants are DENIED WITHOUT PREJUDICE. Accordingly, it is hereby ORDERED, as follows:

1.    Katz hereby is appointed as lead plaintiff in Case No. 25-CV-08368, and Katz's selection of Scott+Soctt as lead counsel in that case is approved.

2.    Shahsavanpour and Patel hereby are appointed as lead plaintiffs in Case No. 25-CV-08393 and their selection of the Schall Firm as lead counsel in that case is approved.

3.    Case No. 25-CV-08368 and Case No. 25-CV-08393 shall be coordinated for discovery and case management purposes.

4.    No later than February 16, 2026, the parties in Case No. 25-CV-08368 and Case No. 25-CV-08393 shall meet-and-confer and file a joint letter providing a proposed schedule for Plaintiffs to file any amended pleadings and for Defendants to respond to the pleadings in the respective actions.

17

The Clerk of Court is respectfully requested to change the caption on the ECF docket for Case No. 25-CV-08393 to list Shahsavanpour and Patel as lead plaintiffs.

**SO ORDERED.**

Dated:      New York, New York
            February 2, 2026

_____
STEWART D. AARON
United States Magistrate Judge